Filed 5/19/22  P. v. Clark CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>KEVIN CLARK,<br><br>        Defendant and Appellant. | C091978<br><br>(Super. Ct. No. 00F06600) |

Defendant Kevin Clark appeals from the trial court's order denying his petition for resentencing under Penal Code section 1170.95[1] as to his conviction for first degree murder.  In a multi-faceted argument encompassed by a single heading, defendant contends the trial court erred in (1) finding him ineligible for relief as a matter of law, as he made a prima facie showing of eligibility; (2) engaging in improper factfinding; and

---

[1] Undesignated statutory references are to the Penal Code.

1

(3) not giving him an opportunity to file a supplemental brief in propria persona after his counsel filed a supplemental brief purporting to be filed pursuant to *People v. Wende* (1979) 25 Cal.3d 436 in the trial court.

The Attorney General responds that the record of conviction establishes that defendant was convicted of murder as the actual killer or as a direct aider and abettor and is therefore ineligible for relief. He adds the trial court was not required to allow defendant to file a brief in propria persona and that any error was harmless.

We will affirm the trial court's order denying the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

*Defendant's Case*

A detailed recitation of the underlying facts is set forth in our prior opinion in this case. For purposes of our current review, it suffices to say that in December 1999, defendant and his sister Helen Tibon lived together with the victim and the victim's toddler daughter. The three adults stole mail and made money from the credit cards, checks, and other financial information they found. The victim was arrested in the fraud scheme and spent about two months in jail before defendant bailed her out. In March 2000, Tibon told a friend she and defendant had killed the victim. The friend went to defendant's home and found the victim nude in the bathtub, gravely injured but still alive. When the friend returned the next day, the victim was dead. Defendant and Tibon dismembered the victim's body, burned parts of it in a fireplace, and stored other portions in a cousin's home. (*People v. Clark* (Nov. 10, 2004, C043131) [nonpub. opn.] (*Clark*).)

Defendant was charged with murder (§ 187) and was tried jointly with Tibon before separate juries. (*Clark, supra*, C043131.) Defendant's jury was instructed regarding murder pursuant to CALJIC Nos. 8.10 (defining murder), 8.11 (defining malice aforethought), and 8.30 (second degree murder). The jury was further instructed per CALJIC No. 8.20 that, if it found "that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of

2

deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree." The jury was also instructed regarding direct aiding and abetting pursuant to CALJIC No. 3.01.

In addition, at the request of defendant's counsel, the trial court instructed the jury regarding conspiracy with modified versions of CALJIC Nos. 6.10.5 (defining conspiracy and overt act) and 6.11 (defining joint responsibility). The instructions noted that conspiracy was *not charged* in the case, and that "in order to find a *witness* to be a member of a conspiracy, in addition to proof of the unlawful agreement and specific intent, there must be some proof of the commission of at least one overt act. It is not necessary to such a finding *as to any particular witness that [the] witness* personally committed the overt act, if he or she was one of the alleged conspirators when the alleged overt act was committed." (Italics added.) The instructions continued: "Each member of a criminal conspiracy is liable for each act and bound by each declaration of every other member of the conspiracy if that act or declaration is in furtherance of the object of the conspiracy. . . . [¶] A member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates did agree to and commit, but is also liable for the natur[al] and probable consequences of any act of a co-conspirator to further the object of the conspiracy, even though that crime is not intended as a part of the agreed upon objective and even though he was not present at the time of the commission of the act. [¶] You must determine whether the witness is guilty as a member of a conspiracy to commit the originally agreed upon crime or crimes, and, if so, whether the crime alleged in Count One was perpetrated by a co-conspirato[r] in furtherance of that conspiracy and was a natural and probable consequence of the agreed upon criminal objective of the conspiracy."

3

Although the prosecutor did not object to the trial court's use of CALJIC Nos. 6.10.5 and 6.11, he expressed concern about their use, explaining that even though he did not plan to argue defendant was guilty under the theory of natural and probable consequences, he understood that defense counsel would argue that certain witnesses were coconspirators, and "it's not going to be a hard leap for [the jury][to] say, well, [defendant] is a co-conspirator, too, so therefore he's guilty."

During closing argument, defense counsel argued there had been a conspiracy to commit mail fraud, to dispose of a body, and to commit murder. Defense counsel pointed to the testimony of Tibon's friend and argued the friend had encouraged the murder and therefore was guilty of conspiracy to commit murder. He then argued that the natural and probable consequence of the conspiracy to commit mail fraud was the killing of the victim, since she had been arrested and might have implicated defendant and Tibon.

The prosecutor argued defendant was guilty of murder either as the actual killer or as an aider and abettor and noted that some of the witnesses had pleaded guilty to helping cover up the victim's murder and had been sentenced to jail. In his rebuttal, the prosecutor argued the jury should not disbelieve the testimony of Tibon's friend (about defendant's role in the murder) merely because the friend may have been involved in a mail fraud conspiracy or a murder conspiracy.

The jury found defendant guilty of first degree murder. (§ 187, subd. (a).) He was sentenced to state prison for 25 years to life, and we affirmed the judgment on appeal. (*Clark, supra*, C043131.)

*Defendant's Petition*

In July 2019, defendant filed a petition for resentencing under section 1170.95. Defendant declared an information had been filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, he was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine,

4

and he could not now be convicted of first or second degree murder based on the recent changes to sections 188 and 189. The trial court appointed counsel.

In August 2019, the prosecution filed a response to defendant's petition, arguing as relevant here that defendant was not eligible for relief because he was the actual killer and asking the trial court to dismiss defendant's petition.

In November 2019, defense counsel filed a brief, arguing as relevant here, that defendant had made a prima facie showing of eligibility for resentencing under section 1170.95, based on his declaration in his petition. In March 2020, counsel filed a supplemental brief acknowledging that it "does not appear that the jury was instructed on either theory of felony-murder or the natural and probable consequence doctrine as set forth in [§ 1170.95]" and asking the trial court to independently review the record under *Wende* to determine whether defendant was eligible for resentencing under section 1170.95.

Later that month, the trial court denied defendant's petition, reasoning he had failed to make a prima facie showing that he was entitled to relief. The court noted it had received the briefs from the parties and the "facts proved at trial . . . were that [defendant and Tibon] killed the victim." The court also noted that the jury was not instructed on either felony murder or the natural and probable consequences doctrine of aider and abettor liability.

Defendant timely appealed. After multiple continuances in the briefing schedule, the case was fully briefed on January 31, 2022, and assigned to this panel on February 15, 2022. The parties waived argument and the case was deemed submitted on April 12, 2022.

## DISCUSSION

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437), which became effective on January 1, 2019, "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder

5

liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Gentile* (2020) 10 Cal.5th 830, 842.)

Section 188, which defines malice, now provides in part: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2.) Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 1015, § 3.)

Senate Bill No. 1437 also added section 1170.95, which allows those "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" to petition the court for relief "when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . . [¶] (2) The petitioner was convicted of murder . . . following a trial . . . . [¶] (3) The petitioner could not presently be convicted of murder . . . because of changes to

6

[s]ection 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a); Stats. 2018, ch. 1015, § 4.)

"Within 60 days after service of a petition that meets the requirements set forth in subdivision (b), the prosecutor shall file and serve a response. The petitioner may file and serve a reply within 30 days after the prosecutor's response is served. These deadlines shall be extended for good cause. After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1170.95, subd. (c); Stats. 2018, ch. 1015, § 4.)

Our Supreme Court has clarified that section 1170.95, subdivision (c) requires only a single prima facie showing and entitles the petitioner to the appointment of counsel upon the filing of a facially sufficient petition. (*People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*).) Once the court has appointed counsel and received briefing from the parties, it may rely on the record of conviction (including a prior appellate court opinion) in determining whether that single prima facie showing has been made. (*Id*. at pp. 971-972.)

The prima facie inquiry under section 1170.95 subdivision (c) is "limited." (*Lewis, supra*, 11 Cal.5th at p. 971.) The court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Ibid*.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.)

7

We first address defendant's contention that, after defense counsel filed a supplemental brief requesting *Wende* review, the trial court erred in considering the record of conviction without first giving defendant an opportunity to file a supplemental brief. On appeal, defendant concedes the *Wende* procedures do not apply to proceedings in the trial court. (*People v. Thurman* (2007) 157 Cal.App.4th 36, 45 [*Wende* procedures only apply to a defendant's first appeal and do not extend to trial court proceedings].) Still, defendant argues that his counsel's *Wende* brief indicated to the trial court that defense counsel no longer supported the arguments made in prior briefs, and he was thus entitled to additional briefing because *Lewis* requires an opportunity for briefing before the trial court may consider the record of conviction. (See *Lewis, supra*, 11 Cal.5th at p. 957.) Defendant's argument ignores the fact that he had ample opportunity to submit briefing in support of his petition and did so, with the help of appointed counsel. Defendant points to no authority suggesting he had the right to file yet another brief in the trial court, and we decline defendant's invitation to find such a right, particularly given the fact that *Wende* procedures were inapplicable. Further, as we next explain, because defendant is ineligible for relief as a matter of law, no prejudice could have resulted from any dearth in briefing.

Defendant next argues the trial court engaged in improper factfinding and erroneously weighed the evidence in denying his petition. He points to evidence introduced at trial whereby he argues the jury might have found him guilty of murder as an aider and abettor under the natural and probable consequences theory. He adds that it was error to deny his petition, because the jury could have found him guilty of murder under the natural and probable consequences theory given that the jury was instructed on aiding and abetting, conspiracy, and the natural and probable consequences theory, referencing the extra instructions that were given to the jury regarding the witnesses at defendant's request.

8

As we have set forth above, the jury found defendant guilty of first degree murder, necessarily finding per CALJIC No. 8.20 "that *the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation*." Defendant was not charged with conspiracy and was not a witness in his case. Although the jury was instructed on request of defendant's trial counsel that it could find one or more *witnesses* guilty of an unspecified conspiracy, it was not instructed that it could find *defendant* guilty of anything, let alone murder, based on his or any witness's participation in a conspiracy. The prosecutor argued defendant was guilty of murder either as the actual killer or as a direct aider and abettor, and the jury was not instructed on any other theory of liability for murder, such as liability as an aider and abettor under a natural and probable consequences theory. The jury was instructed pursuant to CALJIC No. 1.00 that it must follow the law as stated by the court, and defense counsel's speculative statements during closing argument about various possible conspiracies did not transform the instructions into directions to the jury that it could find defendant liable for first degree murder with deliberation and premeditation based on a theory of natural and probable consequences.

We agree that the record of conviction establishes defendant was convicted of first degree murder either as the actual killer or a direct aider and abettor. Because the criminal liability of direct aiders and abettors did not change under Sen. Bill No. 1437 (see *People v. Gentile*, *supra*, 10 Cal.5th at p. 848), the trial court did not err in denying the petition for resentencing under section 1170.95 as defendant is ineligible for relief as a matter of law.

9

## DISPOSITION

The trial court's order denying the petition is affirmed.

/s/
_____
Duarte, J.

We concur:


/s/
_____
Robie, Acting P. J.


/s/
_____
Renner, J.

10